UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CAROLYN ANNETTE SALIN,<br><br>　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL,<br>　Acting Commissioner of Social Security,<br><br>　　　　　　　　　　Defendant. | 3:18-cv-00494-MMD-CBC<br><br><br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE[1]** |

This case involves the judicial review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Carolyn Salin's ("Salin") application for disability insurance and supplemental security income payments pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383. Currently pending before the Court is Salin's motion for remand. (ECF No. 15.) In this motion, Salin seeks the reversal of the administrative decision and remand for an award of benefits. (*Id.*) The Commissioner filed a response and cross-motion to affirm (ECF Nos. 18/19), and Salin filed a reply (ECF No. 20). For the reasons set forth herein, the Court recommends that Salin's motion for remand, (ECF No. 15), be denied, and the Commissioner's cross-motion to affirm, (ECF No. 18), be granted.

I.   **STANDARDS OF REVIEW**

　A.   Judicial Standard of Review

This Court's review of administrative decisions in social security disability benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party,

---

[1]   This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides." The Court may enter, "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The Court must affirm an Administrative Law Judge's ("ALJ") determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the Court must look at the administrative record as a whole, weighing both the evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citation omitted). Under the substantial evidence test, a court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2003). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Shalala,* 50 F.3d at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if substantial evidence supports

the Commissioner's decision. The ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

B. <u>Standards Applicable to Disability Evaluation Process</u>

The individual seeking disability benefits bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. *See* 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The first step requires the ALJ to determine whether the individual is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities, usually for pay or profit. 20 C.F.R. §§ 404.1572(a)-(b), 416.972(a)-(b). If the individual is currently engaging in SGA, then a finding of not disabled is made. If the individual is not engaging in SGA, then the analysis proceeds to the second step.

The second step addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits him from performing basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than

a minimal effect on the individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rulings ("SSRs") 85-28 and 96-3p.1 If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to the third step.

The third step requires the ALJ to determine whether the individual's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and meets the duration requirement (20 C.F.R. §§ 404.1509, 416.909), then a finding of disabled is made. 20 C.F.R. §§ 404.1520(h), 416.920(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to the next step.

Prior to considering step four, the ALJ must first determine the individual's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all of the symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSRs 96-4p, 96-7p. To the extent that objective medical evidence does not substantiate statements about the intensity, persistence, or functionally-limiting effects of pain or other symptoms, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

4

After making the RFC determination, the ALJ must then turn to step four in order to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(f), 416.920(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and performed at SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to the fifth and last step.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to bear the burden of proving disability at this step, a limited evidentiary burden shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Lockwood v. Comm'r, Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).

**II.     CASE BACKGROUND**

   A.     Procedural History

Salin applied for supplemental security income ("SSI") and disability insurance benefits ("DIB") on July 6, 2015 with an alleged onset date of February 28, 2014, which she later amended to August 1, 2015. (Administrative Record ("AR") 15, 188-202.) The application was denied initially (AR 92-93), and on reconsideration. (AR 114-15.) Salin subsequently requested an administrative hearing. (AR 131-32.)

On August 8, 2017, Salin and her attorney appeared at a hearing before an Administrative Law Judge ("ALJ"). (AR 27-68.) Lisa Suhonos, a vocational expert ("VE"), also appeared at the hearing. (*Id.*) The ALJ issued a written decision on December 1,

2017, finding that Salin was not disabled because she could perform work existing in significant numbers. (AR 12-26.) Salin appealed, and the Appeals Council denied review on August 16, 2018. (*Id.* at 1-6.) Accordingly, the ALJ's decision became the final decision of the Commissioner. Having exhausted all administrative remedies, Salin filed a complaint for judicial review on October 12, 2018. (ECF No. 1.)

### B. ALJ's Decision

In the written decision, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. (AR 12-26.) Ultimately, the ALJ disagreed that Salin has been disabled from August 1, 2015, through the present date. (*Id.* at 26.) The ALJ held that, based on Salin's RFC, her age, education and work experience, she was able to perform past work and there were jobs in the national economy that she could perform. (*Id.* at 22-26.)

In making this determination, the ALJ started at step one. Here, the ALJ found Salin had not engaged in substantial gainful activity from the alleged onset date of August 1, 2015, through the present. (*Id.* at 21.) At step two, the ALJ found Salin had the following severe impairments: obesity, scoliosis and degenerative disc disease of the lumbar spine, and degenerative disc disease of the cervical spine per 20 C.F.R. §§ 404.1520(c) and 416.920(c). (*Id.*) At step three, the ALJ found Salin did not have an impairment or combination of impairments that either met or medically equaled the severity of those impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1; 20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.925, and 416.926. (*Id.* at 22.) Next, the ALJ then determined Salin's RFC. The ALJ determined Salin had an RFC to perform less than the full range of light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), which required Salin to occasionally use foot controls on the right. (*Id.* at 22-25.) According to the ALJ's RFC determination, Salin was capable of "occasionally stoop[ing], kneel[ing], crouch[ing], and craw[ling]," and could "frequently balance and climb ramps and stairs." (*Id.*) However, she can never "climb ladders, ropes, or scaffolds," and "must avoid concentrated exposure

to unprotected heights and hazardous or moving machinery." (*Id.*) Additionally, she is "limited to frequent right-sided overhead reaching." (*Id.*)

Based on this RFC determination, the ALJ determined Salin was capable of performing less than the full range of light work. (*Id.* at 25.) In addition, the ALJ found Salin not disabled and denied her application for a period of disability insurance and supplemental security income benefits. (*Id.* at 25-26.)

## III.  ISSUES

Salin seeks judicial review of the Commissioner's final decision denying her SSI and DIB under Titles II and XVI of the Social Security Act. (ECF No. 15.) Salin raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical evidence when determining Salin's RFC and posing hypothetical questions; and,
2. Whether Salin's symptom claims were properly discredited.

## IV.  DISCUSSION

### A.  Residual Functional Capacity and Hypothetical Questions

Salin argues the ALJ failed to properly assess her RFC because he rejected a proposed six-hour stand/walk limitation, and, therefore, failed to pose legally adequate hypothetical questions to the VE. (ECF No. 15.)

In September 2015, based on a diagnosis of degenerative disc disease, examining physician Steven E. Gerson, M.D., opined Salin's impairments would limit her to standing and/or walking for a total of six hours out of an 8-hour work day. (AR 319-325.) Nonexamining physicians Robert Vestal, M.D., and Robert Mitgang, M.D., agreed. (AR 77, 88, 101, 111.)

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing to *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

To reject the uncontradicted opinion of an examining physician, the ALJ must provide clear and convincing reasons that are supported by substantial evidence in the record. *Lester*, 81 F.3d at 831. Similarly, an ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citing *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)).

All of the determinative findings by the ALJ must be supported by substantial evidence. *See Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). However, the ALJ "need not discuss *all* evidence presented" but instead must only "explain why 'significant probative evidence has been rejected.'" *Vincent v. Hackler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).

While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rationale interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The ALJ accorded "significant weight" to the three physician's opinions except the six-hour limitation on standing/walking. (AR 22-25.) The ALJ rejected the limitation because after thoroughly reviewing the opinion evidence, the claimant's subjective complaints and testimony, the treatment history, and the objective medical evidence, he found no further limitations were supported.[2] (*Id.*) The Court concludes, the ALJ provides

---

[2] Although the ALJ did not specifically state the evidence did not support a six-hour stand/walk limitation, it is the only unaccounted for limitation recommended by the three physicians. Therefore, despite Salin's contentions to the contrary (ECF No. 15 at 8), the ALJ did address the suggested limitation. (AR 24-25.)

8

specific reasons, supported by substantial evidence, for discounting the six-hour stand/walk limitation.

Specifically, the ALJ points to the following: (1) treatment notes show treatment was effective in significantly reducing Salin's pain; (2) electromyogram ("EMG") and nerve conduction studies of the lower extremities were negative; (3) only mild findings were found upon diagnostic studies of Salin's cervical spine, including an MRI taken on March 24, 2016, and X-rays taken on April 19, 2016; (4) during physical examinations Salin was consistently noted as being in "no acute distress"; (5) Salin did not exhibit spasms at the neck or back, had normal grip strength, had no "clubbing, cyanosis, ulcerations varicosities, or Homan's sign at the extremities", had negative bilateral straight leg tests, intact cranial nerves and fine motor coordination bilaterally, did not demonstrate any atrophy of the muscles, had a normal gait, and had a full range of motion of the left shoulder, elbows, wrists, and lower extremities. (AR. 24-25.) An independent review of the record supports the ALJ's reasons for discounting the six-hour stand/walk limitation. (AR 319-325, 332-333, 337-339, 346, 355-357, 369-370, 374-376, 436-437, 438-440, 462.)

Additionally, while it is true the ALJ did not adopt the stand/walk limitation, the ALJ did consider the sedentary exertional level of work. This is evidenced in the hearing transcript when Salin's attorney presented the VE a hypothetical individual with a RFC that included the limitation to sedentary work. (AR 71-72.) Additionally, the ALJ provided clarifying statements regarding whether this hypothetical individual would meet the medical vocational guidelines of sedentary residual capacity. (*Id.* at 71.) A hypothetical that includes a residual functional capacity which incorporates the limitations and restrictions of the claimant is sufficient. *See Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001). Therefore, the ALJ did not err in this regard.

B. <u>Adverse Credibility Finding</u>

Salin argues the ALJ failed to provide specific findings for discrediting her symptom claims, instead improperly relying on daily activities detailed throughout the record rather

9

1  than just those discussed at the hearing and cherry picking objective medical evidence.
2  (ECF No. 15 at 12-17.)

3  An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154m 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and, (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

A review of the record shows the ALJ provided specific, clear, and convincing reasons for finding Salin's statements concerning the intensity, persistence, and limiting effects of her symptoms less than credible.

    i.    *Objective Medical Evidence*

Subjective testimony cannot be rejected solely because it is not corroborated by objective medical findings, but medical evidence is a relevant factor in determining the severity of a claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ relied on objective medical evidence that supports the RFC rather than Salin's allegations of pain. Although the ALJ cannot cherry pick objective medical evidence from the record, they can consider contrary objective medical evidence in making a credibility determination. Here, the ALJ provided a thorough summary of the medical evidence in which he highlighted specific objective findings that support the assigned RFC.[3] (AR 22-25.) He also considered Salin's follow up care at a neurosurgery clinic, her use of pain medication, physical therapy, and epidural steroid injections, which showed improvement in Salin's pain levels. (*Id.* at 24.) Despite Salin's contentions that the treatments were not always effective, (ECF No. 15 at 12-17), the record reflects numerous instances where she self-reported her pain levels had improved with treatment, (AR 332-333, 337, 365, 372, 374, 377, 389), and did not appear to be in obvious pain or distress. (AR 325, 357.) The ALJ assigned a reduced RFC with postural and environmental limitations. Accordingly, the Court finds the ALJ provided clear and convincing reasons for finding Salin not credible to the extent her testimony exceeds the RFC.

    ii.    *Daily Activities*

An ALJ may discredit a claimant's testimony when she reports participation in everyday activities indicating capacities that are transferable to a work setting. *See Molina*, 674 F.3d at 1112-13; 20 C.F.R. § 404.1529(c)(3)(i). Further, the inconsistency

---

[3] The ALJ's summary is detailed above in Section A.

11

between a claimant's alleged symptoms and her daily activities, is sufficient to support a finding that a plaintiff was not entirely credible. *See Lingenfelter*, 504 F.3d at 1040 (in determining credibility, an ALJ may consider "whether claimant engaged in daily activities inconsistent with alleged symptoms"). Specifically, daily activities may be grounds for discrediting a claimant's testimony when a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferrable to a work setting." *Fair v. Brown*, 885 F.2d 597, 603 (9th Cir. 1989). Even when such activities suggest some difficulty functioning, the ALJ may discredit a claimant's testimony to the extent they contradict claims of a totally debilitating impairment. *See Turner*, 613 F.3d at 1225.

Here, the ALJ also found Salin less credible because the account of her daily activities was inconsistent with her alleged limitations. (AR 23.); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant less credible). In an August 9, 2015 Function Report, Salin stated she could do household chores including doing laundry, making the bed, cleaning up, vacuuming, washing dishes, cooking for herself and her boyfriend, feeding and caring for her two cats, driving, shopping for groceries and cat food, going target shooting, making earrings, and going out with friends regularly while also managing her personal care tasks and finances. (AR 258-265.) Additionally, at the hearing, Salin testified she cared for her ailing mother from June 2015 until January 2016, including giving her mother sponge baths, helping with medications, dressing her, preparing meals, changing the bedding, and doing the laundry. (AR 38-43.) Based on these findings, the ALJ determined Salin's subjective symptom testimony was inconsistent with her alleged impairments. (AR 22-25.)

Salin disputes the ALJ's findings, arguing her symptoms progressed in the time since submitting the Function Report. (ECF No. 15 at 14-16.) She states her testimony at the hearing more accurately describes her current abilities. (*Id.*) Specifically, she points to her testimony that her boyfriend now helps with laundry and vacuuming (AR 44, 51),

when she grocery shops she likes to push the cart to help with her balance (AR 51), and when she goes shooting she brings a chair to sit on as needed. (AR 44.)

However, the ALJ's reference to Salin's daily activities accounts for, and specifically references Salin's testimony at the hearing. (AR 23.) Moreover, the majority of Salin's testimony reinforces the daily activities cited to by the ALJ rather than contradicting them. (AR 43-49.) The ALJ even asked Salin, "Now, you told the Social Security Administration you liked to – you clean the house, you cook, you feed the cats. You like to make jewelry. You like to go driving. You go target shooting several times a month. Is that all kind of still true?," to which Salin replied, "Yeah, pretty much. I haven't really done my jewelry in a while." (AR 49.) As such, Salin's activity level suggested she had a greater overall functional capacity then she alleged.

Therefore, the Court finds the ALJ provided "specific, clear and convincing" reasons supported by substantial evidence for discounting Salin's credibility as to her subjective limitations. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1991) (holding that an indication a claimant is able to take care of personal needs, prepare meals, do easy housework, and shop for groceries can be seen as inconsistent with a condition precluding all work activity).

**IV.   CONCLUSION**

Having reviewed the Administrative Record as a whole, and weighing the evidence that supports and detracts from the Commissioner's conclusion, the Court finds the ALJ's decision is wholly supported by substantial evidence and recommends the decision be affirmed. The Court therefore recommends Salin's motion for remand (ECF No. 15) be denied, and the Commissioner's cross-motion to affirm (ECF No. 18) be granted.

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.	This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.	RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for remand (ECF No. 15) be **DENIED** and Defendant's cross-motion to affirm (ECF No. 18) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: August 21, 2019.

_____
**UNITED STATES MAGISTRATE JUDGE**